UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| THOMAS W. TILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:11-cv-155-WTL-WGH |
| ) | |
| MD ALFRED TALENS, Medical ) | |
| Doctor, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Defendants' Motions for Summary Judgment**

Plaintiff Thomas Till ("Till"), a prisoner incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"), filed an amended complaint alleging that the defendants violated his constitutional rights pursuant to 42 U.S.C. § 1983. Till alleges that he was denied the protective equipment, training, and medical care necessary to safely work his sanitation job at the prison. As a result he had feces splashed in his eye and mouth. After this incident he was allegedly provided with inadequate medical treatment. In addition, when Till was given a vaccination related to his sanitation job, the nurse administering the shot used a glove with blood on one of the fingertips. He claims these circumstances violate his Eighth Amendment rights. See Amended Complaint at dkt 9. The plaintiff seeks the following: a declaratory judgment, compensatory and punitive damages, and costs and fees.

Defendants Scott McGavic, Dustin Miller, and Laurie Petty (the "State Defendants") seek resolution of the claims alleged against them through summary judgment. Defendants Alfred Talens, M.D., Sharon Wilkes, Carole Pearison, and Stephanie Stonerock (the "Corizon Defendants") also seek resolution of the claims against them through summary judgment.

For the reasons explained below the Corizon defendants' motion for summary judgment [31] **is granted as to Dr. Talens and Ms. Wilkes and denied in part as to Ms. Pearison and Ms. Stonerock.** The State defendants' motion for summary judgment [35] is **granted.**

## Standard of Review

The motions for summary judgment in this civil rights action, as with any such motion, must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S.Ct. 1769, 1776 (2007). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

The Local Rules of the Southern District of Indiana require the non-movant's response brief to include a section labeled "Statement of Material Facts in Dispute" that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment. See Local Rule 56-1(b). Facts included in movant's Statement of Material Facts Not in Dispute, if supported by admissible evidence, will be assumed admitted without controversy, unless challenged in the responding party's Statement of Material Facts in Dispute. Local Rule 56-1(e). The Seventh Circuit has consistently and repeatedly upheld district courts' discretion to require compliance with the local rules governing summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635 (7th Cir. 2008); *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission.").

## Material Facts

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Till as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

### *Wabash Valley Policy Regarding Infectious Materials*

A mess in a cell that includes feces but which does not include visible blood is not considered an "other potentially infectious materials" mess. Wabash Valley policy defines "other potentially infectious materials" as

> (1) The following human body fluids; semen, vaginal secretions, cerebrospinal fluid, synovial fluid, pleural fluid, pericardial fluid, Peritoneal fluid, amniotic fluid, saliva in dental procedures, any body fluid that is visibly contaminated with blood, and all body fluids in situations where it is difficult or impossible to differentiate between body fluids; (2) Any unfixed tissue or organ (other than intact skin) from a human (living or dead); and (3) HIV-containing cell or tissue cultures, organ cultures, and HIV- or HBV-containing culture medium or other solutions; and blood, organs, or other tissues from experimental animals infected with HIV or HBV.

(Facility Directive, WVC # 07-07, the Biohazard Response/Cleanup Procedure, § 3D.) Offenders who clean up messes that do not involve blood or other potentially infectious materials are not required to have the Wabash Valley Blood-Borne Pathogens/Biohazard Clean-training program, and they are not required to wear the special equipment contained in the Biohazard Response Kit, including special goggles, face shields, and gloves.

An offender who cleans up a mess in a cell only involving feces should wear protective equipment including safety goggles and gloves. Offenders cleaning up messes involving only feces must first ask an officer in charge for the equipment. Goggles and suits are kept in the "control pod" on another floor so that those items are not stolen. Standard gloves are kept at a desk on the housing unit floor. This standard protective equipment, including safety goggles and gloves, can be accessed by officers for offender use once an offender requests it. Standard protective equipment like safety goggles and gloves is different from the special equipment contained in the Biohazard Response Kit because the standard equipment is designed for use in cleaning up non-infectious messes.

### *Till's Exposure to Feces*

Till worked as a sanitation worker on the K-Housing Unit while incarcerated at Wabash Valley. "During the whole time" Till worked in the K-Housing Unit he asked Defendants Wilkes, Miller (a counselor in the K-Housing Unit), and Petty (Officer in charge of K-Housing Unit) to get him vaccination shots, training, a protective face shield, special gloves, boots, and a jumpsuit for cleaning up blood, urine, feces, etc. Am. Compl. ¶¶ 1-4.

On August 30, 2010, at around 9:20 p.m. Till was asked to clean up cell K-403 because it had feces in it. Till demanded that he receive vaccinations, training, and special protective equipment before he would clean up the feces mess in the cell.

A correctional officer (an unidentified L-Housing Unit Pod Officer and/or Officer Arnett, the floor officer at the K-Housing Unit, both non-parties) threatened to issue Till a conduct report and stated that Till would be fired from his job if Till refused to clean the cell. Dkt. 9 at p. 4. Till did clean the cell (using a power sprayer) and as he did so, feces splashed into his right eye and mouth.

*Medical Care*

Till was then taken to the infirmary or medical unit at Wabash Valley where he was seen by RN Ashley M. Wagler. Nurse Wagler notified Defendant Alfred Talens, M.D., one of the physicians who provided services to offenders at Wabash Valley, of the situation.[1] Consistent with Dr. Talens instructions and the established medical protocol at Wabash Valley for exposure to feces, Nurse Wagler instructed Till to wash his right eye for 15 minutes with tap water from the sink.

On September 1, 2010, Dr. Michael Rogan, M.D., another physician providing services to offenders at Wabash Valley, examined Till. At this visit Till complained of getting feces into his eyes and his mouth. Dr. Rogan ordered lab tests for Hepatitis C and HIV. Lab tests were performed on Till September 17, 2010. Those tests showed that Till was negative for Hepatitis C and HIV. Lab tests were ordered for March 1, 2011, but there is no evidence that any follow-up tests were conducted. *See* dkt 49-1 at p.1.[2]

There is no evidence that Till developed an illness or contracted a disease from his exposure to the feces.

---

[1] Till asserts that Defendant Talens "should have ordered Plaintiffs eye and mouth flushed out with a medicated cleansing solution and some type of vaccination shot" in response to Till's exposure to feces. Dkt 48 at p. 1. This statement is not admissible evidence because it violates Rule 602 of the Federal Rules of Evidence, in that the record contains no indication that Till has any personal knowledge about what Dr. Talens "should have ordered" in response to Till's alleged exposure to feces. Nor is any other evidence presented to support this assertion. Till claims that "any moron would know this should be done, it's common knowledge." Dkt. 60 at p. 1. The proper cleaning of feces from the eyes and mouth with an unidentified medicated solution is not "common knowledge."

[2] Till asserts that the testing ordered was inadequate because it was conducted too soon for the virus to appear in the test. First, this assertion is not admissible evidence because the record contains no indication that Till has any personal knowledge about the adequacy and timeliness of medical treatment. Second, the test may have been appropriate to determine if Till had HIV of Hepatitits C prior to or at the time of his exposure to the feces. Third, there is no evidence in the record that Hepatitis C or HIV can be transmitted through feces.

*Corizon*

Corizon, Inc., formerly known as, Correctional Medical Services, Inc. ("Corizon") provides medical and mental health services to offenders at WVCF pursuant to a contract with the IDOC. Corizon does not provide any services to offenders other than medical and mental health services.

At the time relevant to this civil action defendants Sharon Wilkes, Carole Pearison and Stephanie Stonerock were employees of Corizon. Employees of Corizon do not and have never selected or assigned offenders to work on prison sanitation crews, provided training to offenders who are assigned to work on the prison sanitation crew, or provided equipment or protective clothing to offenders who are assigned to work on the prison sanitation crew (except for offenders assigned to the infirmary). These activities are outside the scope of Corizon's contract with the IDOC.

Nurses employed by Corizon will provide vaccinations to offenders who may be exposed to biohazardous materials, once those offenders have completed training provided by the IDOC. Till attended a blood-borne pathogens class and vaccination session on September 23, 2010. At that session, Till received a Hepatitis B vaccination in order to clean up blood-borne pathogens/biohazard messes in connection with his work cleaning cells in the K-Housing Unit ("KHU"). Defendant Carole Pearison, RN, administered the vaccination to Till. In administering the vaccine, Nurse Pearison kept on the same gloves that she used on prior offenders to give Till his shot. A "smear" of fresh blood was visible on the fingertip of one of Nurse Pearison's gloves. Nurse Stonerock was present at the time, but Defendant McGavic was not at that training session.[3]

Till filed a grievance regarding Nurse Pearison's failure to change gloves between inmates which was investigated and the IDOC concluded that Defendant Stonerock and Defendant Pearison were not following policy by not changing gloves after every injection.[4]

---

[3] According to the training roster at Wabash Valley, another officer attended the blood-borne pathogens class and vaccination session, not Defendant McGavic.

[4] The grievance response provided that the nursing staff would be re-educated about the proper procedure. Till asserts that he can present evidence showing that Stonerock and Pearison continue to violate the rules by not changing their gloves when giving injections to offenders contrary to the grievance response he received stating that the nurses were re-educated about changing gloves per each inmate. Such evidence is not material to Till's prosecution of his claims. This evidence would not reflect Till's treatment, but the treatment of other inmates not parties to this action. In addition, the defendants and court assumes for the purpose of this motion that Pearison in fact did not change gloves prior to treating Till on September 23, 2010.

Till received additional Hepatitis B vaccinations on October 25, 2010, and March 17, 2011.

## Discussion

### *Eighth Amendment*

As previously noted, Till's complaint is brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

The constitutional provision pertinent to Till's claim is the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The Eighth Amendment imposes a duty on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To determine whether an inmate's Eighth Amendment rights were violated by a deprivation, the violation is examined both objectively and subjectively. "First, the deprivation alleged must be objectively, sufficiently serious." *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001) (*quoting Farmer*, 511 U.S. at 832, 114 S.Ct. 1970). "Second, the mental state of the prison official must have been 'one of deliberate indifference to inmate health or safety.'" *Id. See also Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837 (construing *Estelle*).

### *Corizon Defendants*

Till argues that the Corizon Defendants violated his Eighth Amendment rights. Specifically, Dr. Alfred Talens did not provide him with adequate treatment; Carol Pearison and Stephanie Stonerock failed to change sanitary gloves when providing him with a vaccination for Hepatitis C on September 23, 2010; and Sharon Wilkes failed to provide him with vaccinations, training, and protective equipment and clothing in connection with Till's work on the sanitation crew. Each of these claims is addressed below.

1.  **Dr. Talens**

Till alleges that Dr. Talens "did nothing" for him in response to Till's complaint on August 30, 2010, that he had gotten feces in his right eye. Till argues that Dr. Talens should have ordered Nurse Wagler to cleanse Till's eye and mouth "with some type of medicated solution" instead of instructing him to flush them with ordinary tap water in the sink. Dkt 46 at p. 2. He argues that Dr. Talens had a "duty and responsibility to Plaintiff to order the cleaning solution be used on Plaintiff and order him vaccinated, but failed to do so, knowing that Plaintiff could contract some infectious disease as a direct result of not ordering it done." Dkt 46 at p.2.

The claim against Dr. Talens is one of failure to provide constitutionally adequate medical care. Specifically, the Eighth Amendment imposes a duty on prison officials to provide medical care to inmates. *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). In order for an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The undisputed evidence reflects that Till received immediate attention from nursing staff, next-day attention from a physician, and prompt assessment of disease transmission. Since then, Till has made no health complaints of any kind related to his alleged exposure to feces. The evidence fails to demonstrate that Till suffered any actual illness as a result of his alleged exposure to feces.[5] In the face of the undisputed evidence that medical and nursing staff responded promptly and diligently to Till's problem, the fact that Dr. Talens did not directly intervene in Till's treatment does not constitute deliberate indifference. In addition, there is no evidence to support Till's argument that Dr. Talens' treatment decisions departed substantially from accepted professional judgment, practice and standards. Accordingly, **Dr. Talens is entitled to summary judgment as a matter of law.**

2.  **Defendant Sharon Wilkes**

Till alleges that during the time he was working on the sanitation crew in the K-Housing Unit at Wabash Valley, he asked Nurse Wilkes on several occasions to provide him with vaccination shots, training, and protective clothing, and that she "failed and made no attempt to do anything for Plaintiff." Till argues that although Wilkes was a nurse and could not personally provide all of the items he requested she had the duty to call the persons necessary to have those things provided to Till to

---

[5] It is unfortunate that Till has suffered mental anguish and re-occurring nightmares of dying. But there is no evidence which suggests that Till was inadequately treated following his exposure to feces.

ensure his health and safety. Dkt. 46 at p. 1. In addition, Till argues that Wilkes kept face masks, gloves and goggles to protect her eyes in her office, but that she refused to provide them to Till for his protection and safety "saying she can't." Dkt. 46 at p. 2.

"[N]ot all prison conditions trigger eighth amendment scrutiny-only deprivations of basic human needs like food, medical care, sanitation, and physical safety." *See James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The claim against Nurse Wilkes is one of deliberate indifference to a pervasive risk of harm; that is, exposure to feces and other filth while cleaning. See *James,* 956 F.2d at 700. The deliberate-indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer,* 511 U.S. at 842.

The undisputed evidence demonstrates that Nurse Wilkes had neither the authority nor the ability to provide Till with training or protective clothing. In 2010, Nurse Wilkes was employed by CMS, now Corizon. Nurse Wilkes' duties and authority extended exclusively to providing nursing services to offenders such as Till. She was simply the wrong person to ask for training or protective clothing. In addition, the record reflects that offenders assigned to clean up messes involving only feces must first ask an officer in charge for protective equipment. This standard protective equipment, including safety goggles and gloves, is regularly kept near the housing unit and can be accessed by officers for offender use once an offender requests it. There is no evidence to suggest that Nurse Wilkes was the officer in charge on August 30, 2010, responsible for providing Till with gloves and eye goggles upon request prior to cleaning the feces from the cell in the KHU. Nurse Wilkes was not deliberately indifferent by failing to provide Till with a personal set of standard protective equipment when such equipment was available for use upon request from the officer in charge at the time such equipment is needed.

Nurses employed by Corizon, do provide vaccinations to offenders assigned to the sanitation crew, but only after the offenders receive biohazard training provided by IDOC. Till acknowledges that he did ultimately receive training, and his initial vaccination was provided by Defendant Pearison on September 23, 2010, with subsequent vaccinations on October 25, 2010, and March 17, 2011. Until Till had completed the training, neither Nurse Wilkes nor any other nurse employed by Corizon had the authority to administer a vaccine to Till. Nurse Wilkes "failure" to vaccinate Till does not constitute a departure from accepted professional judgment, practice or standards.

For all of these reasons, **Nurse Wilkes is entitled to summary judgment as a matter of law.**

### 3. Nurse Carole Pearison and Nurse Stephanie Stonerock

Till argues that Nurse Pearison endangered Till's safety when she ran out of clean gloves and wore a pair of gloves with blood while administering a vaccination shot to him. As to Nurse Stephanie Stonerock, Till alleges that she failed to protect him from Nurse Pearison's actions. For the purpose of this motion it is assumed that Nurse Pearison failed to change gloves before giving Till a vaccination and that one of the gloves she wore when she gave him his vaccination had blood on it. It is also undisputed that Nurse Pearison's failure to change gloves between inmates violated facility policy. The relevant issue, however, is whether this failure violates the Eighth Amendment.

The defendants argue that to recover against Nurse Pearison, Till must advance evidence that he suffered from a serious medical condition that mandated treatment, and that Nurse Pearison acted or failed to act with a culpable state of mind. This argument misses the mark. The Supreme Court has rejected the "thesis that only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment." *Helling,* 509 U.S. at 34. Till states a cause of action under the Eighth Amendment by alleging that Nurse Pearison has, with deliberate indifference, exposed him to another person's blood which poses an unreasonable risk of serious damage to his future health. To prevail on his claim Till must "prove both the subjective and objective elements necessary to prove an Eighth Amendment violation." *Id.* at 35.

Objectively, Till must show that the blood on a glove used in administering a vaccination shot exposed him to an unreasonably high risk of serious damage to his future health. *Id.* at 35. In addition, determining whether Till's "conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure" to another inmate's blood. *Id.* at 36. "It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling,* 509 U.S. at 36.

A material issue of fact exists as to this objective component and thus summary judgment will not be granted on this basis. The record reflects that exposure to another person's blood creates unique health risks. These risks are significant enough that prisoners exposed to blood in the course of their prison employment must complete a Blood-Borne Pathogens/Biohazard Clean-training program and are provided with a Biohazard Response Kit, including special goggles, face shields, and gloves. Given this record the court cannot find that that a serious

potential harm does not exist from the use of bloody gloves during the administration of a vaccine. In addition, it is hard to imagine anyone allowing a medical provider to use gloves with another person's blood on it while being stuck with a needle.

As to the subjective element, the defendants argue that there is no evidence that Nurse Pearison acted with a culpable state of mind, or that she knew of and disregarded any excessive risk to Till's health or safety. "Deliberate indifference" means recklessness in a criminal subjective sense, such as disregarding a risk of danger so great that knowledge of the danger can be inferred. *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992). The defendants argue that Nurse Pearison was wearing gloves when she vaccinated Till, which reduced the risk of infection. But that does not make any sense. The gloves reduced Nurse Pearison's risk of infection because they protected her hands, but the same cannot be said in regards to Till, because the outside of the gloves had another inmate's blood on them.

Summary judgment in favor of Nurse Pearison is not appropriate given the record before the court. There is a material question of fact regarding 1) whether not changing gloves between inmates receiving vaccinations, when one of the gloves has blood on it, poses an unreasonable risk of serious damage to an inmate's future health; and 2) whether Nurse Pearison knew of and disregarded an excessive risk to Till's health.

Summary judgment is also not appropriate as to Nurse Stephanie Stonerock. The defendants argue that Till alleges that Nurse Stephanie Stonerock is vicariously liable for Defendant Pearison's actions and that there is no evidence that Till was experiencing a "serious medical need" to which Nurse Stonerock was "deliberately indifferent." In the absence of such evidence, the defendants argue that Nurse Stonerock is entitled to summary judgment. But Till's argument is that Stonerock endangered Till's safety by standing by and watching as Pearison vaccinated Till while using a contaminated pair of gloves. Dkt 46 at p. 3. This is a failure to protect claim, not a failure to provide medical care claim or a vicarious liability argument.[6] The "paradigm case of deliberate indifference" is one in which an officer witnesses an inmate assault but fails to intervene. *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008); *Haley v. Gross*, 86 F.3d 630, 642 (7th Cir. 1996); *Snead v. Unknown No. of U.S. Bureau of Prisons Corr. Officers*, 308 F. App'x 18, 20 (7th Cir. 2009).

---

[6] To the extent Nurse Stonerock is sued under a theory of vicarious liability she is entitled to summary judgment on that claim. ASection 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise. . . . *Monell's* rule [is that] that public employees are responsible for their own misdeeds but not for anyone else's.@ *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009)(citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658 (1978)).

Because the defendants' have not addressed this theory of liability, summary judgment in favor of Nurse Stonerock is **denied**.

The defendants also seek summary judgment as to compensatory damages. The defendants argue that Till has demonstrated no evidence of contamination or illness associated with Nurse Pearison's failure to change gloves before vaccinating him. The undisputed facts reflect that there is no evidence that Till has had any signs or symptoms of infection or illness since September 23, 2010, related to Nurse Pearison's alleged failure to follow the accepted procedure. This fact limits the relief available for Till. Specifically, without a physical injury, compensatory damages are not available (because "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," 42 U.S.C. § 1997e(e)). But this does not make actual physical injury "a filing prerequisite for the federal action itself." *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011) (quoting *Calhoun v. DeTella,* 319 F.3d 936, 940 (7th Cir. 2003)).

Prison officials who recklessly expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights, and therefore are subject to those remedies that are not barred by section 1997e(e)—injunctive relief of course (which is not sought by Till) but also nominal and arguably punitive damages. *Smith*, 631 F.3d at 421 (citing cases); *see also Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) (§ 1997e(e) is "inapplicable to awards of nominal or punitive damages for the Eighth Amendment violation itself").

**Nurse Pearison and Nurse Stonerock are entitled to summary judgment in their favor as to any compensatory damages claims. In other words, Till may not recover damages for his mental or emotional injuries.** *See Zehner v. Trigg*, 952 F. Supp. 1318, 1322 (S.D. Ind. 1997) *aff'd,* 133 F.3d 459 (7th Cir. 1997).

*State Defendants[7]*

    1.    **Mr. McGavic**

**Summary judgment was requested by and shall be entered in favor of Mr. McGavic.** The undisputed record reflects that McGavic was not personally

---

[7] Till was given an opportunity to supplement his response brief with a citations to the record. The supplement relevant to the State Defendants' motion was filed on July 3, 2012, at docket number 61. Citations which did not reference admissible evidence were disregarded. When *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (inadmissible hearsay cannot be used to overcome a properly supported motion for summary judgment). For example paragraph numbers 45, 48-50 of the amended complaint contain inadmissible argument and legal conclusions.

involved or responsible for the allegations during the September 23, 2010, incident and thus is not liable under § 1983. Till acknowledges that Defendant McGavic is not an appropriate defendant in this action.

### 2. Petty and Miller

Till argues that he asked Petty and Miller on more than one occasion to get him protective clothing items, training, and vaccination shots he was required to have to protect him from infectious diseases during his job as a sanitation worker but they refused to provide him with protective clothing boots, gloves and face shields.

The State Defendants argue that the record demonstrates that Petty and Miller were not deliberately indifferent to Till's medical needs or his safety. The mess that Till was asked to clean up involved feces in a cell in K-Housing Unit. There is no evidence that the mess involved blood or some other potentially infectious materials, which under Wabash Valley policy does not require an offender to have had either the blood-borne pathogens clean-up training or protective biohazard equipment found in the special biohazard kits. Standard protective equipment, such as goggles and gloves, is available on the unit if the offender chooses to wear that equipment. An offender who wants to use goggles or gloves must first ask for the equipment. There is no evidence that biohazard vaccinations, training, and special biohazard equipment clothing was necessary to protect Till's health prior to cleaning a cell with feces on the wall.

There is no evidence (or even an allegation) that Petty or Miller were responsible for Till's assignment to clean the feces covered cell on September 30, 2010, or that they denied him standard protective equipment on the K-Housing Unit at the time Till was to clean the cell at issue. There is no evidence that Petty or Miller acted to prevent Till from having what he needed under the Wabash Valley clean-up procedure. The undisputed evidence reflects that special equipment was not necessary for Till to safely complete his assignment of cleaning up feces. Because there is no evidence to support a claim that Petty or Miller created conditions that objectively "pos[e] a substantial risk of serious harm" or were reckless in knowing of a risk of harm and were deliberately indifferent about it no constitutional violation occurred and they are entitled to summary judgment. *Farmer*, 511 U.S. at 834-38.

The State Defendants also argue that they are entitled to qualified immunity. Qualified immunity protects government officials from liability from constitutional violations of which a reasonable person could not be aware of at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). Since there was no constitutional violation committed by Petty or Miller the qualified immunity defense is irrelevant. *Mucha v. Vill. of Oak Brook,* 650 F.3d 1053, 1057–58 (7th Cir. 2011).

## Conclusion

Defendants **Dr. Alfred Talens, Nurse Sharon Wilkes, Scott McGavic, Lt. Laura Petty, and Counselor Dustin Miller** are entitled to summary judgment on the constitutional claims alleged against them.

**Defendants Carol Pearison and Stephanie Stonerock are entitled to summary judgment as to compensatory damages. Their motion for summary judgment as to liability for the Eighth Amendment violations alleged is otherwise denied.**

**IT IS SO ORDERED.**

Date: _09/20/2012_

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Distribution:**

**All Electronically Registered Counsel**

Thomas W. Till
109020
Wabash Valley Correctional Facility - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
Carlisle, IN 47838